IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA

v.

CALID PETTIFORD

Magistrate No. 26-1228

**[UNDER SEAL]**

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT AND ARREST WARRANT

I, Ryan P. O'Sullivan, being first duly sworn, hereby depose and state as follows:

1.      I am a Special Agent of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), assigned to the Pittsburgh Field Office, Group II. I have been employed as an ATF Special Agent since September of 2015. While at the ATF National Academy, I received extensive training in investigating federal firearms, arson, explosives and narcotics related violations, conducting surveillance, establishing probable cause, and executing search and arrest warrants.

2.      As an ATF Special Agent, I am an "Investigative or Law Enforcement Officer" of the United States within the meaning of Title 18, United States Code Section 2510(7); that is, I am an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516.

3.      As an ATF Special Agent, I am responsible for enforcing Federal criminal statutes and am authorized to serve arrest and search warrants under the authority of the United States. I have participated in numerous federal and state search warrants related to firearms, arson, explosives and narcotics violations, and I have assisted in the writing of affidavits to this effect.

1

4.      I have participated in criminal investigations with ATF as well as other federal, state and local law enforcement agencies relating to violations of various federal laws. Your affiant has been involved in firearms related arrests and the execution of search warrants and arrest warrants, which resulted in the seizure of firearms and has assisted in the supervision of activities of confidential informants who provided information and assistance resulting in controlled purchases of firearms.

5.      The following allegations are based upon your affiant's personal observations, training and experience, along with information obtained from other agents, law enforcement personnel, and witnesses.  This affidavit is submitted for the limited purpose of establishing probable cause. Accordingly, it does not include every fact known to me in connection with this investigation.

6.      For the reasons set forth below, there is probable cause to believe that, on or about July 13, 2026, in the Western District of Pennsylvania, Calid PETTIFORD, possessed a machinegun, in violation of Title 18, U.S.C. § 922(o).

**<u>PROBABLE CAUSE</u>**

7.      On July 13, 2026, at approximately 1:31am, Allegheny County Emergency Services Dispatch received a 911 call for a female shot in her stomach at 507 Washington Avenue, Clairton, PA 15025. Officers from Clairton Police Department, located in Clairton, Pennsylvania, were dispatched to respond and arrived on scene at approximately 1:35am. Upon arriving to the scene, Clairton Police advised Allegheny County Dispatch that a female victim was deceased and that there was a second male victim, later identified as Calid PETTIFORD, who had also been shot. PETTIFORD was transported to a local hospital in critical condition.

2

8.     At approximately 1:42am, the Allegheny County Police Department's Homicide Unit was requested by the Clairton Police Department to assist with the investigation.

9.     On the same date, Allegheny County Police Detectives responded to the scene at 507 Washington Avenue and observed the female victim deceased in an upstairs bedroom. It should be noted that the Detectives learned the deceased female was pregnant.

10.    Allegheny County Police Detectives observed a white Kia sedan bearing Pennsylvania registration MVF-4598 that was parked outside of the residence.  The vehicle was unoccupied with the trunk and front passenger side door open.  I know this to be a vehicle that PETTIFORD drives based upon my prior investigative activities related to PETTIFORD. Notably, your Affiant had been investigating PETTIFORD in recent weeks given public Instagram stories/posts involving PETTIFORD possessing various firearms, including firearms that were affixed with Machinegun Conversion Devices (MCDs) or Glock Switches.

11.    Additionally, your Affiant learned that the white Kia sedan associated with PETTIFORD was identified as the suspect vehicle involved at a shooting in Duquesne, Pennsylvania, on or about July 12, 2026 at around 8:30pm, only hours prior to this shooting event.

12.    The residence located at 507 Washington Avenue, Clairton, PA 15025, is part of a two-story attached brick townhouse/apartment building consisting of multiple adjoining residential units. The building has a red brick exterior, individual front entrances for each unit, and front facing windows on both first and second floors.

13.    As part of their investigation into the shooting, Allegheny County Police located (19) spent shell casings outside this residential structure. The casings were in two groups with one group consisting of (10) casings and the other group consisting of (9) casings.  One grouping

of such casings was located to the left of the residence's front entrance and the second grouping was located to the right of the front entrance to the residence. One of the groupings of casings was in close proximity to the aforementioned white Kia sedan that was associated with PETTIFORD.

14.    On the same date, an Allegheny County Police Detective responded to the hospital where PETTIFORD had been transported to make contact with PETTIFORD.

15.    Upon this Detective's arrival, he spoke with medical staff and learned that PETTIFORD was being treated for a single gunshot wound to the chest, was in critical condition, and was currently in surgery.

16.    On the same date, Allegheny County Police Detectives conducted an interview with the deceased female's boyfriend, identified in this affidavit by his initials, JB, at the hospital.  JB stated that he was sleeping at 507 Washington Avenue residence at the time of the homicide when he heard gunshots coming through the front screen door of the residence. JB provided no further useful information.

17.    While processing the shooting scene at 507 Washington Avenue in Clairton, (4) firearms were recovered from the scene in a nearby wood line.

18.    Two of the four recovered firearms were equipped with a Machinegun Conversion Device (MCD) commonly referred to as a "Glock switch" which converts a semiautomatic pistol to be able to fire in a fully automatic capacity. Glock pistols equipped with MCDs or "Glock Switches" are illegal under 18 U.S.C. § 922(o).

19.    On of these firearms, which is the subject of this affidavit, is described as a **Glock pistol, model 45, caliber 9mm, SN: BSNF502** equipped with a gold colored "Glock switch" Machinegun Conversion Device (MCD) and a gold "Thread protector" screwed onto the tip of

4

the barrel. The firearm was loaded with an extended magazine. Based upon my training and experience, I know that the pistol equipped with gold-colored aftermarket accessories makes it very distinct in appearance.

20.     While processing the homicide scene, Allegheny County Police Detectives located a cellphone that was attributed to PETTIFORD. These detectives obtained a state search warrant for the device and extracted its contents.

21.     After the search warrant for PETTIFORD's cellphone was signed,[1] your Affiant reviewed a copy of the cellphone extraction and observed several videos created approximately one hour prior to the shooting which left PETTIFORD nonfatally wounded, and the pregnant female deceased.

22.     In multiple videos filmed around this time, PETTIFORD is filming himself brandishing several firearms, one of which appears consistent with the very distinct looking **Glock pistol, model 45, caliber 9mm, SN: BSNF502** equipped with a gold colored "Glock switch" Machinegun Conversion Device (MCD), a gold "Thread protector" screwed onto the tip of the barrel, and an extended magazine which was recovered from the shooting scene.

23.     The one noticeable difference is in the videos, the firearm has a light/laser attached to it, whereas upon recovery it no longer had this accessory attached. Multiple times throughout the videos, PETTIFORD made a clear effort to hold the firearm up to the camera and point the gold "Glock switch" directly at the camera, which is indicative of his knowledge and functionality of the device.

24.     On July 10, 2026, about three days prior to the shooting discussed above, at approximately 9:02am, I viewed a public social media video that was posted approximately 5

---

[1] It should also be noted that your Affiant obtained a federal search warrant to seize and search PETTIFORD's cellphone at Mag No. 26-1116.

hours earlier. This video depicted four males, one of which was PETTIFORD, and was filmed at a location tagged "Clairton, Pennsylvania."  In this video, PETTIFORD brandished a handgun from his front waistband area and held it up directly to the camera. The firearm was easily identifiable as a black Glock pistol and had numerous visible distinct features, based upon my training and experience, to include but not limited to, a gold colored "Glock switch," a gold barrel thread protector, and slide serrations on both the front and rear of the slide.

25.    All of these features of the firearm are consistent with the firearm recovered near the wood line of PETTIFORD's residence on or about July 13, 2026. The only visible difference is in this video the firearm was equipped with a light/laser, whereas there was not a light attached to the firearm on July 13, 2026. Multiple times throughout the video, PETTIFORD made a clear effort to hold the firearm up to the camera and point the gold "Glock switch" directly at the camera, which is indicative of his knowledge and functionality of the device.

26.    Further, based upon my training and experience, I know that laser attachments are easily removed and attached to firearms like the one depicted in the videos discussed above.

27.    In addition to the four firearms, on the evening of the shooting, law enforcement also located and seized a large amount of suspected fentanyl estimated to approximately (300) "bricks" located in a backpack in close proximity to these four firearms, which based upon my training and experience, is intended for distribution and greatly exceeds the amount possessed for the purposes of personal use.

## CRIMINAL HISTORY

28.    As part of this investigation, I have reviewed PETTIFORD's criminal history. PETTIFORD appears to have seven prior arrests involving a firearm, two of which were as a juvenile, and five as an adult.

29.     Additionally, PETTIFORD appears to have prior arrests for terroristic threats, fleeing, burglary and aggravated assault.  That said, despite PETTIFORD's extensive arrest record, he does not appear to have any felony convictions as an adult.

## CONCLUSION

15.     Based upon the above information, your affiant submits that there is probable cause to believe that, on or about July 13, 2026, in the Western District of Pennsylvania, Calid PETTIFORD, possessed a machinegun, in violation of Title 18, U.S.C. § 922(o).

## REQUEST FOR SEALING

16.     It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and search warrants.  I believe that sealing this document is necessary because the items and information to be seized are relevant to an ongoing criminal investigation that is neither public nor known to all the targets of the investigation.

17.     Accordingly, there is good cause to seal these documents because their premature disclosure may give targets an opportunity to flee, destroy or tamper with evidence, change patterns of behavior, notify confederates or otherwise seriously jeopardize the investigation.

18.     The above information is true and correct to the best of my knowledge, information, and belief.

Respectfully submitted,

*/s/ Ryan P. O'Sullivan*
RYAN P O'SULLIVAN
ATF Special Agent


Sworn and subscribed before me, by telephone
pursuant to Fed. R. Crim. P. 4.1(b)(2)(A)
this 28th day of July, 2026.


This matter shall remain under seal until
further order of the Court.


_____
HONORABLE JUDGE KEZIA O. L. TAYLOR
United States Magistrate Judge